Davis, J.,
dissenting:
I dissent from so much of the opinion of the court as holds that the claimant is not entitled to recover.
The three words uin full compensation” may work some ambiguity in the statute, and by a generous expansion they can undoubtedly be made to effect an entire change of all previous laws inconsistent with the provisions which follow them. But *331 courts do not favor repeals of statute by implication, and never regard a series of statutes as tbus repealed unless tlie new act is absolutely inconsistent with the old ones, or revises the whole subject-matter and is evidently intended as a substitute. (Winchester's Case, 14 C. Cls. R., 13, and cases there cited.) I shall endeavor to- show that the construction given to this statute by the majority of the court repeals by implication a whole series of acts and upsets a policy uniformly observed by the legislature since 1789. If the legislature in tended this result, it is the duty of a court to recognize it. As Lord Mansfield said in Pray v. Edie (1 Term R., 313), “ Whatever doubts I may have in my own breast with respect to the policy and expediency of this law, yet, as long as it continues in force, I am bound to see it executed according to its meaning.” The intent of the legislature is, therefore, the thing which we are to seek.
This intent is first to be sought in the words of the statute. If they are not explicit, we may next inquire into the occasion and necessity of the law. (Dwarris on Statutes, 562.) Iu this connection we may refer to the current of previous legislation on the same subject-matter. (Commonwealth v. Downs, 24 Pick., 227.) If it be apparent that public interests will suffer by a particular construction iu a doubtful case, rve should not presume that such construction was intended. (The People v. Com'rs, &c., 3 Scam., 153.) If the subject-matter is such as to make a given construction irrational, we should have regard to the subject-matter as necessarily bearing on the act (Dwarris, 580); and we should give validity to statutes apparently in conflict, so far as they can be reconciled by any fair hypothesis. (Beals v. Hale, 4 How. 37, and cases cited.)
The act of 1877 contains no repeal in terms of the law making three thousand dollars the annual salary of a judge of a Territorial court. The repeal, if it is repealed, is a deduction from the supposed repugnance between the section of the Devised Statutes -which fixed $3,000 as such salary, and the provision in the act of 1877, which appropriates a less sum in full compensation of such salary for one year.
It is a familiar rule in this court that the appropriation of a less sum than the amount of a debt due from the United States and the payment of the sum appropriated do not of themselves operate as a discharge and satisfaction of the debt. (Collins, Case, ante, p. 22). This proposition is not denied by the majority, but they contend that the statutory words, “in full compen *332 sation,” in the act of 1877, operate to repeal the statute fixing $3,000 per annum as the rate of the claimant’s compensation,, and to establish a new raté in its place. Let us first see if “the-current of previous legislation upon the same subject” gives any light for the solution of the question.
The Constitution creates but one paid executive officer — the President. It provides that he shall receive a fixed compensation, to be paid to him at stated times. It also provides that the compensation of a FederaL judge shall be paid at stated! times, and shall not be diminished during his continuance in office. With these exceptions it mates, no provision for the-payment of any person serving the government. It m ikes general provisions for filling official positions, and it leaves to the law-making power to determine the amount of compensation to be given to each.
Thus the Constitution in its only provisions on this subject adopts the two principles of fixedness in amount and regular intervals in time of payment as guides to the law-making power-in determining the compensation of the President and of the judges of the Federal courts. The only English word whicls-expresses these two ideas is the word “salary,” which is defined to be “a stipulated periodical recompense” (Worcester’s Dictionary).
In some of its early legislation respecting the salaries of the President and the judges, Congress adopted the word “compensation” from the Constitution. (1 Stat. L., 72.) The same word was also used in appropriation acts, and has been retained there, uniformly, I think. But as early as February 13,. 1801, the compensation of the circuit judges was st3rled in the statute an “ annual salary.” (2 Stat. L., 100.) On the 3d March, in the same year, an act was passed “to augment the salaries, of the district judges” in. certain States. (Ib., 121.) In 1810, by “an act to increase the salaries” of certain officers of the government, it was provided that “annual salaries” should be “paid quarterly” to “ the Chief Justice of the United States,” and “to-each of the judges of the Supreme Court of the United States.” (3 Stat. L., 484.) And the compensation of retired judges is styled a “salary.” (Rev. Stat., 14.)
Thus it appears 'that in practice Congress has adopted the word salary in order to express the Constitutional idea of compensation to the classes of officers whose compensation the Constitution provided for. It made the following provisions for *333 the much larger class of officials who were the creatures of legislative law, and of whom tbe claimant is one.
The officers of the old Department of Foreign Affairs were paid “ salaries ” under the resolution of the old Congress. (1 Stat. D., 28.) The new department, first styled Department for Foreign. Affairs, but soon changed into the Department of State, fell heir to this madness. In a very early statute Congress enacted that annual salaries should be paid quarterly to the Secretaries and officers of the different departments. (1 Stat. L., 67.) The same word was used to express the compensation of Territorial officers when the Territories were organized (1 Stat. L., 123); of diplomatic representatives (ib., 128); of the doorkeepers of Congress (ib., 253), and of the clerks and employés in the departments (5 Stat. L., 523). The Revised Statutes have adopted and confirmed this nomenclature. (§§ 33, 53, 155, 167, 200, 20 L, 215, 234, 233, 301, 312, 316, 319, 323, 334, 343, 347, 348, 351, 389, 390, 393, 416, 438, 440, 446, 447, 448, 449, 450, 462, 470, 475, 476, 477, 517, 521, 522, &c.) From the statutes it has found its way into the common parlance of the people, and the practice of a century has crystallized it in to a custom. By this usage the compensation, of those who are styled officers and employés of the government, as distinguished from those employed in services requiring' less education and less skill, is universally styled a salary. I understand this word as thus employed to convey the two Constitutional ideas already referred to, viz: 1st. A fixed annual compensation ; 2d. To be paid at stated intervals. It differs from the Constitutional compensation in this respect, that the Constitutional compensation cannot be diminished while the incumbent is in office; while the salary created by law can be prospectively diminished by act of Congress. But this forms no part at* the definition of the word salary.
It follows from the foregoing that when the claimant re ceived Iris appointment he acquired the right to receive for the performance of its duties a fixed annual compensation, payable at stated periods. The statute gave him the right to enjoy this for years. In this respect he possessed an advantage over many officials whom the Constitution and the law leave subject to -executive removal at any time. His rate of compensation was undoubtedly subject to be changed by Congress, but he had the right to infer that should it be disturbed some other rate of compensation would be substituted in its place.
*334 Now if the effect is given to these three words which my colleagues claim for them, I am at a loss to comprehend what was substituted in the place of the general provisions of law which were repealed. Before the passage of the law of 1877 the annual salary of the claimant was $3,000. (Rev. Stat., § 1879.) If that provision was repealed, it is clear that nothing was put-in its place except an appropriation of a less sum for the fiscal year ending June 30, 1878. No provision was made in the act of 1877 for a payment or a rate of payment beyond the latter date. It seems to me incredible that Congress intended to wipe out the previous provision as to salaries without substituting something in its place. To warrant such a conclusion, we should have some stronger and more direct foundation than a deduction from three words in the statute. There can be no doubt that, in the language of one of the authorities which I have cited, “the public interests would suffer by it.” The public is best served by an independent paid official. I cannot conceive that Congress intended to subsitute unpaid officers for salaried officials.
■ Nor do I think that Congress could have intended to reduce the salary for a single year, and to restore it to its old rate at the expiration of the year. In -the language of one of the authorities ’ which I have cited, that proposition strikes me as “irrational.” I dare not presume, in the absence of express words, that the legislature .intentionally debased the salaries of public officers for a single year, with the intention of restoring them to the old standard at the close of the year.
Prior to the act of March, 1877, it had been the uniform policy of Congress, when creating an office, to attach to it a fixed salary. Congress had the undoubted right, except as restrained by the Constitution, to create offices without salaries or to make the salaries dependent upon the will of an accidental majority. If it intended to do so, I think it would have expressed its intent in terms in the statute. If the act of 1877 made no provision for a rate of compensation to the claimant beyond the then current year, and if it is irrational and contrary to public policy to suppose that Congress meant to leave a public official*, in the discharge of a necessary public duty, without the right to a salary, it seems to me more reasonable, more probable, more in accordance with public interests and with the probable intent of the legislature to construe the three words, “in full com *335 pensation,” in tbe act of 1877 as an expression of the legislative propose to pay a sum less than the contract price in full satisfaction ; which the United States can no more do than the in-1 dividual citizen could. I prefer to leave it to the legisative body hereafter, if the court has misinterpreted its will, to indicate it in a more direct and unequivocal manner, rather than deduce such sweeping detailed results from general words at the head of an appropriation bill, in which twenty-ñve pages of appropriations are made “in full compensation for the service of the fiscal year.”
The same general considerations apply to the act of 1878. That act differs from the act of 1877 in that it contains a general repealing clause of all acts inconsistent with or in conflict with its provisions. I do not feel inclined to infer from such general language, which may be applicable to many other things-in the statute, a reversal of a long-settled policy, but rather prefer with this statute, as with the other, to leave fixed salarie» attached to such offices by law until Congress shall directly legislate that no salary is attached to them, or shall in terms permanently change their amount.