**Leo STONER, Plaintiff,**

**v.**

**Coleman A. YOUNG, Mayor of the City of Detroit, and the City of Detroit, Defendants.**

**Civ. No. 79–74739.**

United States District Court,
E. D. Michigan S. D.

Aug. 11, 1980.

Lisa Wenger, Detroit, Mich., for plaintiff.

George G. Matish and Michael A. Hurvitz, City of Detroit Law Dept., Detroit, Mich., for defendants.

## MEMORANDUM OPINION

RALF M. FREEMAN, District Judge.

In this civil action, plaintiff, a former employee of the defendant City of Detroit, claims that defendants discriminated against him on the basis of his age by forcing him to retire solely because of his age. His complaint, as amended, charges that this alleged discrimination was in violation of the Age Discrimination in Employment Act of 1967 (ADEA) as amended, 29 U.S.C. § 621 et seq., the Charter of the City of Detroit, the Constitution of the State of Michigan and the equal protection and due process clauses of the fourteenth amendment to the United States Constitution. The Court's jurisdiction has been invoked under 29 U.S.C. § 626(c). This matter is currently before the Court on cross motions for summary judgment. Plaintiff seeks summary judgment on his claim under the ADEA; defendants contend that they are entitled to summary judgment on all plaintiff's claims.

The facts, as they appear from the pleadings, depositions and exhibits, are as follows. Chapter VI, Title IX of the City of Detroit Charter contains the General Employees Retirement Plan, which establishes a retirement system for all non-uniformed city employees, with exceptions not pertinent here. At all times relevant to this suit, article VI, Part A, section 1.3 of the retirement plan provided, in pertinent part:

Any member, except an elected official of the City, who has attained or attains age sixty-five years shall be separated from service on the first day of the calendar month next following the month in which he attains age sixty-five years. Any such member may be continued in service for periods not to extend beyond his attainment of age sixty-nine years; provided, that his said continuance or continuances in service are (1) requested by him in writing, and (2) approved by his Department Head, and (3) approved by the Board of Trustees.

The provisions of the General Employees Retirement Plan were incorporated into a collective bargaining agreement dated July 30, 1975 between the City and the Senior Accountants, Analysts and Appraisers Association (S–AAA), the union to which plaintiff belonged. The duration clause of this agreement provided:

This Agreement shall become effective upon the effective date of the Resolution of Approval of the City Council as provided by law.

This Agreement shall remain in full force and effect until 11:59 p.m., June 30, 1977, and from year to year thereafter unless either party shall give to the other party written notice of intention to terminate or modify this Agreement no less than thirty (30) days prior to its anniversary date.

Neither party to this agreement has ever given notice of intention to terminate it or modify it and it is still in effect.

Plaintiff was first employed by the City on December 18, 1972, as a Semi-Senior Accountant with the City's Municipal Parking Authority. Prior to his 65th birthday, which was on August 24, 1978, plaintiff requested that he be allowed to continue as an employee beyond this date. Plaintiff was granted an extension of employment until December 24, 1978. By a notice dated October 2, 1978, plaintiff was informed that unless a further extension of service was approved, he was "subject to retirement on" January 1, 1979. Plaintiff requested a further extension of service but this request was denied.

The parties disagree over when plaintiff should be considered to have actually ceased his employment with the City. Defendants, relying on the deposition of the principal accountant of the City's Finance Department and the affidavit of the Senior Personnel and Payroll Clerk in the Parking Department, contend that plaintiff's last day of work was October 16, 1978 and, due to his accumulation of paid vacation time, the last day for which he was paid was December 29, 1978. Plaintiff takes the position that he was mandatorily retired on January 1, 1979, relying on the October 2 notice and defendants' statement in their answer that plaintiff's "last day as a City of Detroit employee was December 31, 1978." Answer, para. 19.

Defendants concede that plaintiff's forced separation from service as a city employee occurred solely because of his age.

*ADEA Claim*

Section 4(a)(1) of the ADEA, 29 U.S.C. § 623(a)(1), states:

(a) It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . .

Section 4(f)(2), 29 U.S.C. § 623(f)(2), provides an exception to this general rule. As originally enacted in 1967, section 4(f)(2) reads as follows:

(f) It shall not be unlawful for an employer, employment agency, or labor organization—

(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual . . . .

Section 12 of the ADEA, 29 U.S.C. § 631, defines the class of persons protected by the Act. As originally enacted it stated:

The prohibitions in this chapter shall be limited to individuals who are at least forty years of age but less than sixty-five years of age.

In *United Air Lines, Inc. v. McMann,* 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977), the Supreme Court held that section 4(f)(2) of the ADEA did not prohibit employers from forcing employees to retire because of their age, even if the employees were within the protected age class, as long as the forced retirements were pursuant to a "bona fide seniority system or any bona fide employee benefit plan." In so holding, the Court reversed a decision by the fourth circuit court of appeals which had held to the contrary. In the instant case, plaintiff does not challenge the bona fides of the City of Detroit's General Employee Retirement Plan.

Partly in response to judicial interpretations given section 4(f)(2), Congress passed the Age Discrimination in Employment Act Amendments of 1978. Pub.L.No. 95–256, 92 Stat. 189 (1978). Section 2(a) of the amendments amended section 4(f)(2) of the ADEA to read as follows:

(f) It shall not be unlawful for an employer, employment agency, or labor organization—

(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual, and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual . . . .

The Senate Committee that considered the amendments expressed approval of the result reached by the fourth circuit court of appeals in *McMann* and indicated that the amendment of section 4(f)(2) was intended to make clear that that section was not intended to allow forced retirement based solely on age. Sen.Rep.No. 95–493, *reprinted in* [1978] U.S.Code Cong. & Ad.News 504, 513. The 1978 amendments also increased the upper age limit of the class protected by the ADEA to age 70. 29 U.S.C. § 631(a); Pub.L.No. 95–256, § 3(a), 92 Stat. 189 (1978).

As is evident from the above discussion, the success of plaintiff's ADEA claim depends on whether it is decided under the Act as originally enacted or as amended. If decided under the Act as originally enacted, plaintiff's claim must fail because (1) since he was over 65 at the time he was involuntarily retired, he was not within the protected class at that time, and (2) under the Supreme Court's decision in *McMann, supra,* any forced retirement required by the terms of bona fide retirement plan did not violate the ADEA. If plaintiff's claim is decided under the Act as amended, then it clearly is meritorious, because (1) plaintiff was younger than 70 at the time he was forced to retire and thus within the protected class, and (2) under section 4(f)(2) any forced retirement based solely on age violates the Act regardless of whether it is required by the terms of a bona fide retirement plan. Thus, the effective dates of the amendments are determinative of plaintiff's ADEA claim.[1] Unfortunately, the is-

1. Plaintiff has not argued that the amendments should be given retroactive effect to forced retirements that occurred before the effective date of the amendments. The vast majority of the courts that have considered this issue have held that the amendments are not retroactive. *See, e.g., Sikora v. American Can Co.,* 622 F.2d 1116 (3d Cir. 1980); *Marshall v. Delaware River & Bay Authority,* 471 F.Supp. 886 (Del. 1979); *Marshall v. Baltimore & Ohio Railroad*

suc is complicated by the fact that different sections of the amendments have different effective dates. Moreover, the effective date of the amendment to section 4(f)(2) is different for different classes of employees.

Section 2(b) of the 1978 amendments prescribes the effective date of the amendment to section 4(f)(2) of the ADEA. Section 2(b) states:

The amendment made by subsection (a) of this section [which amended section 4(f)(2) to prohibit forced retirement even where mandated by a bona fide retirement plan] shall take effect on the date of enactment of this Act [April 6, 1978], except that, in the case of employees covered by a collective bargaining agreement which is in effect on September 1, 1977, which was entered into by a labor organization ... and which would otherwise be prohibited by the amendment made by section 3(a) of this Act [which amended section 12 of the ADEA to increase the upper age limit of the protected class to 70] the amendment made by subsection (a) of this section shall take effect upon the termination of such agreement or on January 1, 1980, whichever occurs first.

The effective date of section 3(a) of the amendments, which increased the age limit for the protected class to 70, is January 1, 1979. Pub.L.No. 95–256, § 3(b)(1), 92 Stat. 189 (1978).

These provisions dealing with the effective dates of the amendments, in effect, divide employees covered by bona fide retirement plans requiring mandatory retirement at ages 65 through 69 into two categories: employees covered by plans that were not in effect on September 1, 1977 and employees covered by plans that were in effect on this date. After January 1, 1979, employees aged 65 to 69 who are covered by plans which were not in effect on September 1, 1977, cannot be forced to

retire solely because of their age. Employees aged 65 to 69 who are covered by plans which were in effect on September 1, 1977 may be mandatorily retired even after January 1, 1979, the effective date of the amendment raising the upper limit of the protected age group. These latter employees are subject to forced retirement within this age bracket until the termination of the collective bargaining agreement setting up the employee retirement plan or January 1, 1980, whichever occurs first.

■ Thus, in order to determine whether plaintiff was covered by the amendments at the time he was forced to retire, the Court must initially determine whether the collective bargaining agreement between the City and the S–AAA, which incorporated the terms of the General Employee's Retirement Plan, was in effect on September 1, 1977, and, if so, whether this agreement terminated prior to the date of plaintiff's forced retirement. Since neither party has ever given notice of intent to terminate the agreement, it is clear from the terms of the duration clause, quoted above, that the agreement was in effect on September 1, 1977, and has not yet terminated.

Plaintiff argues otherwise, relying on statements in the legislative history of the amendments indicating that the reason for allowing the grace period of up to a year [2] for retirement plans in effect on September 1, 1977 was that the provisions of these plans were bargained for in good faith and thus it was felt that management and labor should be given the opportunity to negotiate changes in retirement plans to bring them into compliance with the amendments. Plaintiff contends that the S–AAA and the city had the opportunity after June 30, 1977 to terminate their agreement and change the provisions of the retirement plan so as to comply with the amendments. Be that as it may, the parties chose not to terminate the agreement, and there is no reason to

Co., 461 F.Supp. 362 (Md.1978). *Contra Davis v. Boy Scouts,* 457 F.Supp. 665 (N.J.1978).

2. The grace period is the time between January 1, 1979 when the amendment raising the upper age limit to 70 goes into effect, and January 1, 1980, the latest date on which plans in effect on September 1, 1977 can no longer require the mandatory retirement of employees under age 70.

think that Congress intended to deny them this option. This type of optional termination date is common in labor agreements, and if Congress meant to make special provision for them it would have done so.

Plaintiff's reliance on a proposed interpretation of section 2(b) of the amendments by the EEOC is similarly misplaced. This proposed interpretation states that the grace period provided by this section for collective bargaining agreements in effect on September 1, 1977 does not apply after the "expiration" of such agreements. See 44 Fed.Reg. 68858 (1979). Again, the agreement here, by its own terms, did not expire prior to January 1, 1980, the end of the grace period.

The Court need not resolve the dispute between the parties regarding the exact date plaintiff was retired, since even under plaintiff's version of the facts, the retirement occurred well before January 1, 1980, the date when the amendments became effective to plaintiff under the facts of this case. Therefore, under the Supreme Court's ruling in *McMann, supra*, plaintiff's involuntary retirement did not violate the ADEA.

*Plaintiff's Claim Under the Detroit City Charter*

■■ Plaintiff claims that his involuntary retirement violated section 6–506 and point 2 of the Declaration of Rights of the Detroit City Charter. Section 6–506 of the charter provides that no city employee shall be discriminated against because of his "race, color, creed, national origin, age, political orientation, sex, sexual orientation, or non-disabling handicap." Point 2 of the Declaration of Rights provides:

2. The City has an affirmative duty to secure the equal protection of the law for each person and to insure equality of opportunity for all persons. No person shall be denied the enjoyment of civil or political rights or be discriminated against in the exercise thereof because of race, color, creed, national origin, age, handicap, sex, or sexual orientation.

These provisions must be read in conjunction with section 1.3 of article VI of the General Employees Retirement Plan which is also part of the City Charter and therefore must be accorded equal consideration. It is a well established principle of statutory construction that statutory provisions that apparently conflict must be reconciled, if fairly possible, so as to give effect to each provision. *Beals v. Hale*, 4 How. 37, 45 U.S. 37, 11 L.Ed. 865 (1846). The only reasonable way to reconcile the provisions of the Retirement Plan with section 6–506 and point 2 of the Declaration of Rights is to conclude that the proscriptions against discrimination on the basis of age and the guarantee of equal protection of the laws were not intended to prohibit mandatory retirement at age 65 as required by article VI, section 1.3 of the Retirement Plan. This construction is supported by the fact that at the same time section 6–506 was adopted, as part of a new City Charter in 1973, section 11–102 was also adopted. Section 11–102 provides that the retirement system established by the General Employees Retirement Plan "shall, in all respects, continue in existence exactly as before" the new charter was adopted. Thus, the Court must conclude that the charter provisions plaintiff relies on were not intended to prohibit mandatory retirement at age 65.

*Plaintiff's Claims Under the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and the Constitution of the State of Michigan*

[4] Plaintiff claims that his forced retirement based on his age violated the equal protection clause of the fourteenth amendment to the United States Constitution and article 1, section 2 of the Michigan Constitution, the equal protection clause of the state constitution. Since there is no fundamental right to public employment and age is not a suspect classification, the "rational relationship" test must be applied to determine whether plaintiff's discharge violated his equal protection rights. *Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *Palmer v. Ticciore*, 576 F.2d 459 (2d Cir. 1978). Under

this test, the issue is whether the provisions of the City Charter mandating the retirement of those employees reaching age 65 are rationally related to some legitimate government purpose. *Murgia, supra; Hammond v. Marx*, 406 F.Supp. 853 (Me. 1975).

■ In the Court's opinion, there are several legitimate purposes that the framers of the Detroit City Charter could reasonably conclude would be served by the mandatory retirement provision. One such purpose is to ensure that City employees are not retained beyond the time they can effectively perform their duties. While any classification based on age is likely to be overly broad, in that many persons retain the ability to work effectively well into their later years, the City might properly conclude that it is more desirable to set a cut off age for all employees than to undertake the administrative expense of giving regular fitness tests to all employees. *Murgia, supra*, 427 U.S. at 316, 96 S.Ct. at 2568, *Hammond, supra*, 406 F.Supp. at 857–58. *See Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

Defendants have submitted the affidavits of various employees of the City's personnel department and of other persons familiar with the market for accountants in this area, which identify other legitimate ends the City's mandatory retirement policy might reasonably be believed to serve. These affidavits indicate that in order for the City to induce young, qualified accountants to accept entry level positions with the City, it must offer them opportunities to advance to higher positions. The mandatory retirement policy helps to ensure that the city can offer advancement opportunities by opening up positions for younger employees. In *Talbot v. Pyke*, 533 F.2d 331 (6th Cir. 1976), the Sixth Circuit relied on similar affidavits to hold that a mandatory retirement policy for public employees did not violate the equal protection clause of the fourteenth amendment.

The same analysis applicable to the equal protection claim under the fourteenth amendment disposes of plaintiff's claim under the equal protection clause of the Michi-

gan constitution. *Fox v. Employment Security Comm.*, 379 Mich. 579, 153 N.W.2d 644 (1967); *Salas v. Clements*, 57 Mich.App. 367, 226 N.W.2d 101 (1975).

Since the City's mandatory retirement policy is rationally related to legitimate government purposes, the Court must reject plaintiff's equal protection claim.

*Plaintiff's Due Process Claim*

Plaintiff claims that the City's mandatory retirement policy violates the due process clause of the fourteenth amendment because it creates an irrebuttable presumption that persons over 65 are not qualified to perform their jobs. The same analysis applies to this due process claim as applies to the equal protection claim. *Talbot v. Pyke*, 533 F.2d 331 (6th Cir. 1976). Thus, for the same reasons discussed above, plaintiff's due process claim is not meritorious. *Talbot, supra; Cannon v. Guste*, 10 EPD ¶ 10,460 (E.D.La.1975), *aff'd* 423 U.S. 918, 96 S.Ct. 257, 46 L.Ed.2d 245 (1975).

*Conclusion*

For the reasons stated above, plaintiff's motion for summary judgment is denied and defendants' summary judgment motion is granted. An appropriate order shall be submitted.