## UNITED STATES v. MINTZ.
### No. 7319.

Circuit Court of Appeals, Fifth Circuit.
Nov. 10, 1934.

Jim C. Smith, U. S. Atty., of Birmingham, Ala., and Armistead L. Boothe, Atty., Department of Justice, of Washington, D. C., for the United States.

H. H. Evans, and Leslie C. Longshore, both of Anniston, Ala., for appellee.

Before BRYAN, HUTCHESON, and WALKER, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellee, a disabled veteran suing on a war risk policy, had a verdict finding him totally and permanently disabled. This appeal from the judgment assigns only one error, the refusal to give the affirmative charge. We think the assignment must be sustained. Many disorders are claimed in the petition, but there is no substantial evidence of disease other than some form of heart trouble. At the time of the trial he was suffering from chronic myocarditis. Two physicians, Dr. Shipp and Dr. Cleveland, testified for plaintiff.

Dr. Shipp examined him just before the trial. He testified, "Of course in the beginning it was pretty hard to find out, but now it has reached the point where it is easy to diagnose. It is a later advanced stage of the disease. It takes a good while to get to this stage. It comes on gradually. There is a change in the muscular tissues of the heart. As a rule it is secondary to something else, like pneumonia or influenza." He gave it as his opinion that if plaintiff had a cardio-vascular disorder when he was discharged in 1918, and prior to that time had had influenza, that the disability probably had its inception then and had gradually progressed. On cross-examination he testified, "The heart compensates very good in myocarditis if you do not exert too much. At this stage I would say that the myocarditis is chronic." He also testified that in the face of Mintz's work record he would still be of the opinion that he was permanently and totally disabled when he came out of the Army, because persons with that trouble should not work. Dr. Cleveland treated Mintz in 1929 for influenza, but did not make any thorough physical examination of him then. Two years afterwards in November, 1931, he examined him in connection with a claim for compensation, and found chronic myocarditis. He testified that this disease is usually produced by some other infection, such as bad teeth, pneumonia, etc. He testified that in his opinion, Mintz was in 1931, because of the chronic myocarditis, totally and permanently disabled. He later qualified this by stating that "a man with myocarditis could carry on a certain amount of work, probably." On cross-examination he said, "I think he could very easily do work that requires only short hours, and sitting at a desk, or any exercise that does not require manual labor or physical exercise. The answer is confined to the time since November 16, 1931."

Plaintiff, relying on this testimony of the doctors, and on his own testimony and that of his brother, offered no other evidence except his honorable discharge. According to plaintiff's testimony when he enlisted, he was able to do any kind of heavy manual work. Two weeks after he entered the Army he had influenza, but was not sent to a hospital, and in that condition he was exposed to outside weather in the rain and cold doing guard duty. He never got over the influenza, and was in poor health when discharged in December, 1918. He came home to his father-in-law's and tried to do some work. He does not remember doing anything up until the fall of 1919. In 1920 he did some small jobs. He stayed with his father-in-law until about 1921. In the spring of 1921, when his father-in-law died, he tried to do some work on the crop to finish it up but did not do any work to amount to anything. "During all the rest of the time on down to now my physical condition has not changed materially. My condition now compared to what it was when I was first discharged from the army is just about the same. It has been about the same all the time. When I rested up I felt a little better. If I tried to do work for a day or two I would become weak and smothery for sev-

eral weeks. I have done some work out there at the Soil Pipe for the last few years. The last effort I made to work out there was in 1930 and 1931 a couple of years ago. My work there was of the lightest kind. I did not work anywhere except the Anniston Soil .Pipe from 1925 down." On cross-examination he testified to working some at the Ornamental Foundry in 1919; that he did not deny working at the Anniston Steel Company from January 10, 1920, to November 10, 1920; that he lived on a farm in 1921; that he could not remember what he did in 1922; that he might have been employed at the foundry; that he had not farmed since 1921; that in 1921 he filed claim for compensation; that he stayed with his brother-in-law in 1922 and 1923; took sick while there and did not do anything; that in 1922 he had influenza. He worked with the Anniston Soil Pipe in 1926 and worked there off and on until 1931. "I have not been able to make a very comfortable living since I came back from the army; I have gotten by." On redirect he said, "I had to have some help from the men in the shop."

His brother testified that when appellee came from the Army he looked pale and complained of his chest hurting and smothering; that he would go out to the field with his father-in-law but he never noticed him doing any work; that he knew he worked at the Ornamental Foundry in 1919 but he did not work regularly. "His physical condition now as compared with what it was when he first got back from the army is just about the same. I couldn't say that he has made any marked improvement. It seemed like when he would do some work he would fall away in weight and strength." On cross-examination he said, "My brother looks maybe, a little worse than at the time he came out of the army. He has been working for several years over at the Anniston Soil Pipe. He would complain as he came by the house of hurting in the chest and having some smothering spells."

There was no notation on appellee's discharge papers of any specific ailment or disability. There was only the notation that his physical condition when discharged was poor.

Appellant offered the testimony of three physicians who had examined plaintiff in years past. They all testified that when they examined plaintiff he was not totally and permanently disabled. Dr. Leyden examined Mintz in 1921. He testified, "My diagnosis was, after having made a complete examination of Mr. Mintz, that he had a gum disease and nervousness. I examined his heart. The heart appeared normal. No valve sounds heard, nothing except normal sounds. I found his heart to be normal at that time." Dr. Burns, a specialist in diseases of the chest, heart, and lungs, examined Mintz in May, 1925, giving him a special and thorough heart examination. "I found that he had no heart disease. I didn't find any evidence of myocarditis." He also examined him later in the fall of 1927. "On that date I found he had a toxic myocarditis, or myocardital insufficiency, that is a weakness of the heart muscles or poisoning process; bad teeth or diseased tonsils might cause that condition and I recommended dental treatment. Mintz was not totally disabled in 1925, nor was he totally disabled in 1927. In my opinion in 1927 his diseased teeth caused his myocarditis. I thought the removal of his teeth would relieve it."

On cross-examination he testified: "I examined him in 1925 and found no physical disability whatever. I examined just his heart. I found his heart just about average. Chronic myocarditis may be a gradual development. For it to become severe it usually takes years. It might sometimes take as much as ten years. In my first examination it was pretty nearly a normal heart; that was in 1925. In 1927 it was not severe then so it must have been in the early stages when I saw him in 1927. There was no lack of compensation then."

Dr. Howell testified that he examined Mintz in 1929 and diagnosed his condition at that time as tachycardia, a rapid heart, a functional not an organic disease. He further testified that Mintz was not totally and permanently disabled then.

Other witnesses for defendant testified to Mintz's employment record. In Mintz's application for compensation in 1921 he complained of physical disability, functional cardio vascular disorders beginning in 1918. His application showed that before entering the service he was making $70 a month; that since his discharge he had worked at substantially the same work, making $75 and $80, a month; that he was now farming.

From this statement of the evidence it is quite plain that plaintiff's case depends on his connecting his present condition of chronic myocarditis with his poor health when discharged, and that to do so he relies entirely on the vague and insufficient testimony of his brother and himself, for he has no witnesses

of his condition when he left the Army who either knew or testified that he had heart trouble then. If this were all, it ought to be gravely doubted that a jury case was made out. For to get to the jury plaintiff was required to show a clear connection between the condition he was suffering from at the trial, fifteen years later, and his condition when he left the Army. But this is by no means all. Not only does his own evidence fail for want of positive testimony, but there is, directly contradicting his claim, the positive and uncontradicted testimony of two physicians that he had no heart trouble when they first examined him, one in 1921, another in 1925, and of two that when they found heart trouble, one in 1927, the other in 1929, it was not of a serious and totally disabling character. In addition to all this positive medical testimony making against him, there is the work record, and his own statement that while he has not made a good living, he has managed to get by by working ever since his discharge. Lumbra v. United States, 290 U. S. 551, 54 S. Ct. 272, 78 L. Ed. 492; United States v. Vineyard (C. C. A.) 71 F.(2d) 624. When all of this record is considered in connection with the undisputed fact that the disablement he proved at the trial is gradual in its onset, that it is the result of toxic infection, that since his discharge he has had bad teeth, influenza, and other ailments, all sufficient sources of such infection, it may not be doubted that no jury case was made out; for all that plaintiff has to make a case is the hypothetical generalizations of physicians who examined him recently, that one suffering from chronic myocarditis ought not to work, and that if he was discharged with a bad heart condition, he ought not to have worked. There is no testimony whatever that at his discharge he had such condition.

This is a case like Cunningham v. U. S., (C. C. A.) 67 F.(2d) 714, of an attempt by speculation to bridge the long gap between discharge and trial. If we assume in the face of his work record and the positive evidence of physicians that plaintiff's condition at the time of the trial and for a few years before was such as to make a jury issue on the totality and permanence of his disablement, his case yet fails for want of proof that that condition existed at the time of his discharge. The generalizations of his physicians, his own and his brother's statements that he had done little work and had done that little with difficulty, are wholly insufficient.

The judgment is reversed and the cause remanded.