## UNITED STATES v. VINEYARD.
### No. 7219.

Circuit Court of Appeals, Fifth Circuit.
June 12, 1934.

Randolph C. Shaw, Sp. Asst. to Atty. Gen., and Lawton H. Ware, of Atlanta, Ga., Veterans' Administration, for United States.

Thomas M. Stubbs, of Atlanta, Ga., and A. Sidney Camp, of Newnan, Ga., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

## HUTCHESON, Circuit Judge.

The suit, filed in August, 1931, is on a war risk insurance policy; the claim is that plaintiff became totally and permanently disabled on October 8, 1918. It is admitted that on that date he received a gunshot wound in the lower left leg, and that a serious and disabling injury then resulted. The controversy is over its totality and permanence. The District Judge thought the evidence made an issue for the jury as to these, and over defendant's insistence that it should have an instructed verdict he sent the case to them. A verdict for plaintiff resulted. Defendant is here insisting that, taking the evidence most strongly for plaintiff, it proved no more than that he received a bad and partially disabling leg wound which, though it has since pained and inconvenienced him, cannot be said to have been totally and permanently disabling within the meaning of the policy. Denying its permanence as well as its totality, it argues that on the face of it, if the permanence of the injury be conceded, the case fails for want of totality. Pointing out that the entire loss of a leg below the knee does not of itself constitute total disability, it argues quite convincingly that there is nothing in the evidence to indicate that plaintiff suffered even as great a disability as that would be.

We think defendant is right. There is a great variety of medical opinion as opinion. When it comes to facts as facts, all of the proof is one way as to the only partially disabling character of the injury, and that it has not in fact prevented plaintiff from obtaining his livelihood by work. There is difference of opinion among the physicians as to whether the wound may be or might have been healed, if proper and adequate measures are or had been taken. As to whether, in short, the wound was in its nature when received a permanent injury. Some are of the opinion that a "slip-sliding" operation would greatly relieve, if it would not altogether cure, the disablement. Others do not think so. Some favor amputation just above the wound, and the use of an artificial leg, as being the thing for plaintiff to do. Others think plaintiff is better off with his own leg, affected as it is, than he would be with an artificial one. Some express the opinion, notwithstanding the fact of his having actually worked with reasonable continuity since his discharge from the army, that he is and has been totally and permanently disabled from working; others conclude that the disability is only partial.

All this, however, is mere opinion. When we turn from opinions to facts, we find them all one way, clear and without dispute, entirely free from uncertainty, confusion, or contradiction. They are: That with reasonable continuity he has, since his discharge from the army, been engaged in substantially gainful occupations; that during all of the thirteen years before this suit was filed he has made his living by working. During a good part of this time he has earned on an average of $10 to $15 per week. During the greater part of it he has received compensation from the government on the basis of partial disability. There is no record that he ever, except in connection with this suit, claimed during that whole period that he was totally and permanently disabled, while every statement that he made, and every action that he took, is inconsistent with that claim. It is true, in offset to these facts, plaintiff did prove that the work he has done has been attended with inconvenience and pain, and that friendship and consideration for him as a disabled veteran were large factors in enabling him to get work and keep it. The proof shows too, that the kind of work he has chosen to do, as a shoe salesman for a long while, and latterly as a barber, has been hard on his wound and the cause of much of the pain and discomfort he has suffered from it. There is no proof that he has undertaken to get any work less taxing, and therefore none as to what effect that kind of work would have on him. We may assume, however, that the work he chose to do was the only kind of work available, and still the disability he makes out would in law be no more than partial.

It must be admitted that because of the necessary vagueness of outline of the touchstone, the existence of total and permanent disability, by which these cases must be tested, they are essentially fact cases. U. S. v.

Martin (C. C. A.) 54 F.(2d) 554, 555; U. S. v. Crume (C. C. A.) 54 F.(2d) 556, 557. It is because of this vagueness of outline that the courts have properly refrained from formulating definite patterns or standards to which verdicts must conform. Because of it, they have avoided that "delusive exactness" which is "a source of fallacy throughout the law"[1] not only when it unduly limits the fact-finding range of a judge, but when it unduly limits that of a jury as well. Quanah, Acme & Pac. R. R. v. Gray (C. C. A.) 63 F.(2d) 410; Pokora v. Wabash Ry., 54 S. Ct. 580, 78 L. Ed. 1149. Because of this vagueness of outline, this absence of fact patterns, it has come about that in these war risk cases decisions are cited from different circuits, and sometimes from the same circuit,' which appear to be inconsistent in result. Because of it, it is pressed upon us here with confidence that some of our decisions require that the verdict be not disturbed. Earlier cases relied on are U. S. v. Cox (C. C. A.) 24 F.(2d) 944 and U. S. v. Acker (C. C. A.) 35 F.(2d) 646. Later ones, Wise v. U. S. (C. C. A.) 63 F.(2d) 307; U. S. v. Sorrow (C. C. A.) 67 F.(2d) 372; while many cases are cited from other circuits as supporting the same view. The government, with equal confidence, marshals as opposed the Martin, Crume and Wise Cases, supra, Walters v. U. S., 63 F.(2d) 299; U. S. v. Howard, 64 F.(2d) 533, and O'Quinn v. U. S., 70 F.(2d) 599, from our circuit, numbers of cases from other circuits, and, in addition, Lumbra v. U. S., 290 U. S. 551, 54 S. Ct. 272, 78 L. Ed. 492. This wealth of citation discloses, we think, inconsistencies more apparent than real. Inconsistencies which, when they appear at all, are not in the statement, but in the application of the controlling principle. Inconsistencies which in the writer's opinion but illustrate the undeniable fact that the decision in very close cases, of whether a jury issue is made out, is often an intuitive one; that there are other processes of concluding less easily statable, but sometimes more penetrating,

than those of a downright and avowed formal logic, Love v. N. Y. Life Ins. Co. (C. C. A.) 64 F.(2d) 829, Sibley, J., dissenting; Arnall Mills v. Smallwood (C. C. A.) 68 F.(2d) 57, Hutcheson, J., dissenting; and that "in the end whether a verdict should be instructed is one for the exercise of judgment, not for the mechanical application of formulæ." Gibson v. Southern Pacific Co. (C. C. A.) 67 F.(2d) 758, at page 762.

When all is said, however, it yet remains true that, though vague in outline, the general characteristics of, and requirements for, permanent and total disability appear in all the cases, and that the controlling principles are definitely understood and have been regularly applied. It remains too, that in spite of all the confusion engendered by efforts on the one hand of the government to attach too much, on the other of the plaintiff too little, importance to the fact of the insured's working; on the one hand too much, on the other too little, importance to the fact that the working was attended with pain, discomfort, inconvenience, and even injury to health; on the one hand too much, on the other too little, importance to the fact that favor for his condition entered into his obtaining and retaining work, a sufficiently definite conception of what it all amounts to has taken form and found effect in all these decisions. They make it clear that, in determining whether permanent and total disability exists, all of the evidence, as to the insured's physical and mental condition, as to the work he has done, as to the conditions under which he did it, its actual and threatened effect on his health and life, whether he really worked, or merely held a sinecure through pity for his disablement, must be given due consideration in an effort to determine the fact whether the disablement he received has permanently and totally prevented, and will permanently and totally prevent, his making a living by working. In United States v. Martin[2] and in United States v. Crume,[3] supra, we undertook to carefully set this out.

---

[1] Truax v. Corrigan, 257 U. S. 312, 42 S. Ct. 124, 133, 66 L. Ed. 254, 27 A. L. R. 375, Holmes, J., dissenting.

[2] In the Martin Case, assembling and discussing decisions construing public and private contracts insuring against total and permanent disability, we said: "These decisions all give to the terms the practical common-sense meaning that one is totally disabled when he is not, without injury to his health, able to make his living by working [meaning of course, serious injury]. They reject the idea that it is nec-

essary to prove absolute inability to do any kind of work; they establish that proof that the insured has been able to do some work while evidence on the point is not of itself disproof of disability. * * * There are cases which rightly hold that notwithstanding one has worked continuously for long periods of time he might yet be found to be totally disabled if he has done the work upon sheer resolution, and at the risk or certainty of impairing his health or shortening his life."

[3] In the Crume Case, we said: "We have

We undertook in those cases to point out that disability insurance of this kind is in effect unemployment insurance, when that unemployment is the result of the contingency insured against, total and permanent disability. We held that such contracts are and must be liberally construed to give effect to their paramount purpose of supplying, to the extent of the policy payments, the living which the disability insured against has prevented the insured from earning. Under such a contract one may not be said to be totally disabled when the proof shows that without serious injury or danger to his health and life he has in fact for a long period of years made his living by working. Under such a contract, on the other hand, it cannot be said that mere proof that the insured has worked is disproof of his total disablement when the proof shows that his work was at the risk of serious danger to his health or life, or with such continuous and excruciating pain and suffering, caused by the work, that working under the conditions amounted to an act of heroism. Under such a contract mere proof that a disablement makes working difficult for an insured, and to some extent increases his inconvenience and pain, does not convert a partial, into a total, disability. Too, mere proof that sympathy for the insured's condition has entered into his obtaining and retaining a job does not overcome the downright fact that with substantial continuity he has worked and made his living by working. There is practically no work into which the personal element does not enter; friendship, pity, favor, interest, operate in every field. No single fact in the story of his life, not even the fact of continuous working, taken by itself, is conclusive. Each is significant. Ordinarily, of course, the most significant of all is the work record. If, therefore, the proof shows that with reasonable continuity an insured has been working and making his livelihood, it is unreasonable to say that he is and has been totally and permanently disabled from doing so, unless, countering that proof, it appears that the result of that working has destroyed or threatened to destroy or shorten his life, or seriously impair his health, or that the working has only been apparent; that he did not work in fact, but held a sinecure; that he was, in effect, because of his injuries, a pensioner on the bounty of family or friends. In all of these cases, if there are facts tending to establish total and permanent disability, it is ordinarily for the jury to consider and weigh them. It is for them to consider and weigh the testimony of the insured's physical condition, the medical and expert opinions as to the nature of it, its extent and probable duration, his life history since his injury, and particularly his work record, in the light of all of the other facts and of human experience. If, summed up and counted for all it is worth, the testimony in favor of the insured does not make out a case of total and permanent disability, the courts must say so, and a verdict that it does may not stand.

▇ Tested by these considerations, particularly in the light of the long delay which has attended the bringing of this suit and the heavy burden which that long delay has entailed upon him, we think it clear that plaintiff's proof has wholly failed to make his case out. Particularly is this so when it appears that the only substantial disability is a leg injury, which, though it has caused plaintiff inconvenience and pain, has not prevented him over a long period of years from

had recent occasion to review the general considerations governing suits of this kind. Of these it will suffice to say here that it is ordinarily for the jury to say, under appropriate instructions, whether plaintiff became totally and permanently disabled within the life of the policy, and that where a verdict accords with any reasonable view of the evidence it must be upheld. That policies of this kind, insuring as they do against the contingency of the insured becoming prevented by disability from earning a living for himself by working, are liberally construed to give effect to their purpose of supplying to the extent of the policy payments, the living which his disability prevents him from earning. That under such a policy one is totally disabled when he is not, without injury to himself, able to make his living by working. That it is not necessary to prove absolute inability to do any kind of work and that proof that the insured has been able to do some work, while pertinent evidence, is not of itself disproof of disability. On the other hand, this being a suit on a contract, which if plaintiff's theory is correct has been a claim for nearly twelve years, in the face of evidence that no claim of this kind was ever made until suit was filed, and that during all of the time since his discharge plaintiff has worked at various occupations, he must, in order to recover, present evidence definite and substantial enough to make the inference which he asks the jury to draw as to his condition twelve years before, a reasonable one under the facts, based on probabilities, not possibilities, something more than mere conjecture."

making his living by working as a shoe clerk and a barber. Defendant's motion for a directed verdict should have been granted, Lumbra v. U. S., 290 U. S. 551, 54 S. Ct. 272, 78 L. Ed. 492; Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 74 L. Ed. 720; Stevens v. The White City, 285 U. S. 195, 52 S. Ct. 347, 76 L. Ed. 699.

For the error in refusing it, the judgment is reversed and the cause remanded.

Reversed and remanded.