## NEW YORK LIFE INS. CO. v. STONER.
### No. 11450.

Circuit Court of Appeals, Eighth Circuit.
Feb. 19, 1940.

Rehearing Denied March 22, 1940.

THOMAS, Circuit Judge, dissenting.

———————

William H. Becker, of Columbia, Mo. (Boyle G. Clark, J. E. Boggs, Paul M. Peterson, and Howard B. Lang, Jr., all of Columbia, Mo., H. Templeton Brown, of St. Joseph, Mo., and Louis H. Cooke, of New York City, on the brief), for appellant.

Benjamin Phillip, of St. Joseph, Mo. (B. L. Kaufmann, Francis Smith, and R. E. Culver, all of St. Joseph, Mo., on the brief), for appellee.

Before THOMAS and VAN VALKENBURGH, Circuit Judges, and DEWEY, District Judge.

DEWEY, District Judge.

In this action the appellant, New York Life Insurance Company, asked for a declaratory judgment on four similar combination life and disability insurance policies.

The policies were issued to Lewis K. Stoner, appellee, who claims to have been totally and permanently disabled since June 29, 1931, as a result of an injury sustained when an automobile struck the wagon in which he was riding.

Payments for total disability were made and premiums waived by the company to September 29, 1933. This action covers the right to benefits for the period between May 29, 1936, until January 7, 1938.

The total and permanent disability provisions of the four policies, except as to amounts, are identical. The provisions pertinent to this controversy are as follows:

"Disability shall be considered total whenever the insured is so disabled by bodily injury or disease that he is wholly prevented from performing any work, from following any occupation, or from engaging in any business for remuneration or profit, * * * if the insured performs any work, or follows any occupation, or engages in any business for remuneration or profit, no further income payments shall be made nor premiums waived."

At the trial a jury was waived and the trial court filed a memorandum opinion. In that opinion is a comment as follows:

"* * * the defendant * * * was in court, however, (he walked in during the progress of the trial) and we observed him carefully. (It is knowledge made famous by the oft repeated tale that one can obtain a much clearer comprehension of the appearance and nature of an elephant by seeing one than by hearing the learned descriptions of even four eminent men of science). We observed the defendant carefully. He walked into the courtroom, using a cane, but with only a slight limp, and with no expressions of pain. He appeared to be a strong, vigorous, healthy man, whose manner, features and appearance suggested intelligence above that of the average farmer. * * *

"The whole truth of the matter is that as a result of his injury the defendant has a permanently stiffened ankle; that any extensive use of that ankle is now painful, so that it cannot be extensively used both because of the pain and because of the stiffness; that medical and surgical treatment possibly would remove entirely the pain element in the defendant's ankle condition. The only business in which the defendant has had training and experience is that of farming. He is not physically able, because of his injury and its consequences, to perform those farmer's tasks which require the more or less continuous and full use of both feet. That is the extent of his handicap."

With this statement it was startling on first impression to learn that the court had found the insured totally and permanently disabled.

Summarizing his opinion the court concluded the law governing to be as follows: "To have a declaratory judgment that it is not liable on account of total and presumably permanent disability under a policy of insurance such as are involved in this case an insurance company must prove by the preponderance or greater weight of the

credible testimony that the insured can do any work; or that he can follow any occupation, that is, any of those occupations by which men earn livelihoods for themselves and their families, himself performing such of its duties as substantially constitute that occupation; or that he can engage in any business for remuneration or profit, that is, in any of those businesses by which men earn livelihoods for themselves and their families, himself performing such of its duties as substantially constitute that business." and made one ultimate Finding of Fact as follows: "From May 29, 1936, until January 7, 1938, the defendant was totally and presumably permanently disabled by reason of the injury received by him June 29, 1931", and entered a declaratory judgment that the plaintiff is liable to the defendant for total and permanent disability benefits for the period in question.

The appellant here contends that the court erred: (1) In concluding that the plaintiff bore the burden of proof to show that the defendant was not totally disabled within the meaning of the policies; (2) in the conclusion of law; and (3) in the finding of fact.

As plaintiff's evidence sought to establish that the insured was able to or did engage in a business for remuneration or profit during the period in question, we will limit our discussion to those phrases in the policies.

The only evidence submitted was that of the insured, corroborated by his brother and physicians.

Appellant, New York Life Insurance Company, assumed the burden of proof and is estopped to deny that it was not required to assume that burden.

We would not want to be understood however as holding that it was incumbent on the plaintiff to prove a double negative, as the plaintiff inferred from the court's conclusion of the law. To require a plaintiff to prove a double negative would often result in an unwarranted change of the plain provisions of an agreement.

"Whenever the establishment of an affirmative case requires proof of a material negative allegation, the party who makes such allegation has the burden of proving it, especially where the most appropriate mode of proof is by establishing the affirmative opposite of the allegation." 22 C. J.Evidence, Sec. 15, p. 70.

The most appropriate mode here required the plaintiff to prove, and prove only, the affirmative that the insured can or has during the period in question engaged in some business for profit.

The insured seriously and confidently contends that under the laws of Missouri the facts abundantly establish the total disability of the insured, or at least, substantial evidence to support the ultimate fact found by the trial court.

At the time of the insured's accident he was operating and farming 305 acres. This consisted of two farms, one of 200 acres, known as the Estate Farm, which he rented from his mother, and the balance owned by himself. They were operated as one grain and stock farm. The injury was from a fall resulting in two bones of his lower left leg being jerked out of the ankle joint. Sometime prior to September 29, 1933, he started to manage and operate the two farms in a manner hereinafter described and since that time his physical condition has been about the same, except that the ankle is slightly smaller than it was. The ankle is completely ankylosed and is painful to some extent at all times. He can walk a block or two with the aid of his cane and can drive his automobile without excess pain. When he overdoes the walking or exercising he often experiences pain so severe that he cannot sleep at night. The injury is permanent. His mind is not affected by the injury and has not been at any time.

Since his injury he has not been able to do the actual physical labor connected with the farming but hires it done. Prior to the injury he employed two men constantly on the farm but since the injury he has been able to operate it with one farm hand on account of the employment of a tractor and modern machinery. Since sometime prior to September 29, 1933, he has continued to operate the farm of 305 acres as a grain and stock farm. He buys livestock, cattle and hogs, from others, feeds the produce of the farm to them and sells the livestock. He goes to St. Joseph, Mo., and buys livestock and also buys livestock from his neighbors and in the purchase of livestock he deals with them personally. He drives his car to Omaha and St. Joseph, a distance of 90 to 100 miles, where he trades at the stockyards. He trades and sells livestock through the same commission men who handled his stock transactions before he was injured. He looks after the livestock

on the farm, that is, personally sees it and keeps himself informed and acquainted with what is on the farm.

There is a highway between the two farms and the farms are mostly bordered by roads and he can drive his automobile anywhere that a binder or mowing machine can go, and he does this and drives into the fields and consults with his men about the crops and the method and manner of doing the work. He operates the Estate Farm under an agreement with his mother, pays the operating expenses, including taxes and insurance, and the living expenses of himself and his mother, and makes a profit which he divides with her.

The law becomes important as the court's finding of fact was based upon his conclusion as to the law.

█ In the interpretation of these insurance contracts, if the law applicable has been decided by the highest court of Missouri, the federal courts are required to follow its decision. Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

That court has not construed the phrase used in insurance policies containing the provision that "disability shall be considered total whenever the insured is so disabled * * * that he is wholly prevented * * * from engaging in any business for remuneration or profit", or the phrase, "if the insured engages in any business for remuneration or profit, no further income payments shall be made nor premiums waived."

It has consistently held that where the language of an insurance policy is plain and unequivocal, there is no room for construction and the words must be given their usual and natural meaning. State ex rel. Com. Casualty Co. v. Cox, 322 Mo. 38, 14 S.W.2d 600; Prange v. International Life Ins. Co., 329 Mo. 651, 46 S.W.2d 523, 80 A. L.R. 950; State ex rel. Mutual Benefit, Health & Accident Ass'n v. Trimble, 334 Mo. 920, 68 S.W.2d 685; State ex rel. Metropolitan Life Ins. Co. v. Hostetter, 338 Mo. 589, 92 S.W.2d 112; Heald v. Aetna Life Ins. Co., 340 Mo. 1143, 1148, 104 S.W. 2d 379; State ex rel. Prudential Ins. Co. v. Shain, Mo.Sup., 127 S.W.2d 675.

In Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 370, 1 S.W.2d 99, 101, 57 A.L.R. 615, the court said: "In the construction of the policy, the rules to be followed are well settled. The policy is a contract. Plain and unambiguous language must be given its plain meaning. The contract should be construed as a whole; but, in so far as open to different constructions, that most favorable to the insured must be adopted. * * * However, * * * the rule 'does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists.' "

In considering purely occupational and group insurance policies it has construed somewhat similar provisions insofar as they related to inability to perform any work or follow any occupation as being ambiguous and requiring judicial construction, and have held such construction requires that most favorable to the insured be adopted. So the phrase "any and every duty" was construed judicially to mean "any and every substantial duty," and the phrase "permanently, continuously, and wholly prevented from performing any work for compensation or profit", held ambiguous and open to judicial construction. State ex rel. Metropolitan Life Ins. Co. v. Allen, 337 Mo. 525, 85 S.W.2d 469, 470; Metropolitan Life Ins. Co. v. Hostetter, 338 Mo. 589, 92 S.W. 2d 122; Heald v. Aetna Life Ins. Co., 340 Mo. 1143, 1149, 104 S.W.2d 379, 383.

In the Heald case, supra, the Supreme Court of Missouri apparently adopts the rule in occupational and perhaps in group insurance cases, as follows: "The rule prevailing in most jurisdictions is that the 'total disability contemplated by an accident policy, or the disability clause of a life policy does not mean, as its literal interpretation would require, a state of absolute helplessness; rather, that the disability contemplated means inability to do all the substantial and material acts necessary to the prosecution of the insured's, or, in many instances, any, business or occupation, in a customary and usual manner.' Headnotes to Annotations in 98 A.L.R. 789. The leading cases cited therein from this state are James v. United States Casualty Co., 113 Mo.App. 622, 88 S.W. 125, 127; Foglesong v. Modern Brotherhood of America, 121 Mo.App. 548, 97 S.W. 240; Bellows v. Travelers' Ins. Co. (Mo.Sup.) 203 S.W. 978.' "

In this decision the court was discussing a purely occupational insurance policy. The words "in a customary and usual manner" mean the same as "to substantially perform." Giving to the decisions of the Supreme Court of Missouri their broadest

interpretation, it might be said that in considering phrases in insurance policies similar to the one here in issue, they might construe the phrase most favorable to the insured and say that the interpretation should be, that the disability contemplated means, inability to substantially perform all the substantial and material acts necessary to the prosecution of the insured's, or any, business.

This construction is practically the same as that given by the Federal courts to the term "totally disabled" contained in war risk insurance policies. Lumbra v. United States, 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492; United States v. Green, 8 Cir., 69 F. 2d 921; United States v. Rice, 8 Cir., 72 F. 2d 676, 677; Thompson v. United States, 8 Cir., 65 F.2d 897; United States v. Weeks, 8 Cir., 62 F.2d 1030; United States v. Harth, 8 Cir., 61 F.2d 541, 546; United States v. Vineyard, 5 Cir., 71 F.2d 624; United States v. Nickle, 8 Cir., 70 F.2d 873, 879; United States v. Rye, 10 Cir., 70 F.2d 150, 151, 153; United States v. Sumner, 6 Cir., 69 F.2d 770.

The appellee contends that the construction should go further and the phrases interpreted as limited to the business or occupation in which insured .was engaged when the insurance policies were issued.

And that the phrases should be interpreted as meaning that the insured must perform the substantial and material acts of any business by his own physical efforts.

It may be that some of the appellate courts of Missouri have so construed similar insurance policies.

■ We are not bound to follow the decisions and reasoning of the intermediate appellate courts of Missouri. Erie R. R. v. Tompkins, supra; Graham v. White-Phillips Co., 296 U.S. 27, 31, 56 S.Ct. 21, 80 L. Ed. 20, 102 A.L.R. 24; Beals v. Hale, 4 How. 37, 45 U.S. 37, 54, 11 L.Ed. 865; Hudson v. Moonier, 8 Cir., 94 F.2d 132, 138; Hudson v. Maryland Casualty Co., 8 Cir., 22 F.2d 791.

■ The agreement is obviously not restricted to total disability as to a specific occupation, but includes inability to perform any work, any occupation, or engage in any business for profit, and there is nothing to indicate that the Supreme Court of Missouri has or would adopt such a construction which is contrary to the weight of authority. See Annotations in 98 A.L.R. 789; 79 A.L.R. 857.

■ An interpretation that to constitute engaging in any business for remuneration and profit means that he himself must physically be able to perform all of the duties of the business as substantially constitute that business would do violence to the plain terms of the policy agreement. Unwarranted results would follow from such a construction, for if a man were engaged in a mercantile business and could do all the substantial and material acts necessary and proper in carrying on of that business he .would under this interpretation be considered totally disabled if he were unable to do the work of every clerk and employee in that business.

The trial judge decided that the phrase, engaging in any business for remuneration or profit, was not limited to the specific business in which the insured was engaged when the policies were issued to him, but as he did use the expression "himself performing such of its duties as substantially constitute that business", it might indicate that it was necessary for insured to be physically able to perform all the acts of any business as distinguished from all the acts necessary to carry on any business.

The wording of the quoted law from the Heald case, supra, is "acts necessary to the prosecution of * * * any, business," and not all acts of any business.

■ To interpret these phrases as meaning that it was necessary for insured to perform all the acts or duties of any business, would do violence to the repeated pronouncements of the Supreme Court of Missouri, that where the language is plain and unequivocal, there is no room for construction and the words must be given their usual and natural meaning.

■ It is true that in transacting some of the details of the business in which the insured has been engaged he is discommoded and slowed up by his injury, but this condition does not prevent him and he is able, and does, without any excess pain perform all the material and substantial duties to carry on the business in which he is now engaged. He himself testifies that he is able to perform the duties of this business. He detailed the duties that he now performs in the operation of these farms and testified that he was able to and did perform all of them. There is nothing in the record to indicate that this was done by him in excess of his strength, or with excessive pain or injury to his health.

He is engaging in—that is, devoting attention and effort to, prosecuting or carrying on—a business for profit. Here we do not have to speculate upon whether he can do all such material duties of his business made necessary by engaging therein, for the evidence conclusively establishes that he does do them. Is he engaged in a business? Were he asked what his business was, the last thing he would think of to say would be that he is not engaged in any business.

We are constrained to find that the evidence conclusively establishes that the insured not only can but does substantially perform all the substantial and material acts necessary to the prosecution of the business in which the insured is engaged and that such business returns a profit. The judgment will be reversed with directions to the trial court to enter a declaratory judgment as requested by the appellant.

Reversed.

THOMAS, Circuit Judge (dissenting).

In my opinion the finding and decision of the majority is contrary to the law of the case. The policies in suit are Missouri contracts and their construction is governed by Missouri law. Turner v. New York Life Insurance Co., 8 Cir., 100 F.2d 193; New York Life Ins. Co. v. Levin, 8 Cir., 102 F.2d 403, 405.

The injury resulting in the insured's disability occurred on June 29, 1931. From that date until September 29, 1933, the insurance company conceded that the disability was "total and presumably permanent" within the meaning of the policies, paid the insured the benefits provided therein and waived payment of premiums.

Since the latter date the policies here in suit have been much litigated. A case involving them has been here before. New York Life Ins. Co. v. Stoner, 8 Cir., 92 F.2d 845, 848. In that case this court held that under the provisions of the policies "a judgment in favor of the insured for one period of time did not bind the insurance company in an action for disability benefits for a subsequent period." In addition to that case three different suits have been brought by Stoner in the state courts of Missouri to recover benefits for subsequent periods. The first suit was brought on the four policies in the Circuit Court of Buchanan County to recover disability benefits for the period from September 29, 1933, to March 29, 1934. That case was tried and appealed to the Kansas City Court of Appeals. Stoner v. New York Life Ins. Co., Mo.App., 90 S.W.2d 784. The second suit was brought in the Circuit Court of Platte County (transferred for trial to Daviess County) on two of the policies to recover for the period from April 29, 1934, to May 29, 1936. This case was tried and appealed to the Kansas City Court of Appeals. Stoner v. New York Life Ins. Co., 232 Mo. App. 1048, 114 S.W.2d 167. The third suit on the two policies not declared on in the suit in Platte County was brought in the Buchanan County Circuit Court to recover for the period from May 29, 1934, to May 29, 1936.

The period covered by the present suit for a declaratory judgment is from May 29, 1936, to January 7, 1938.

In my view the majority opinion errs in that (1) the issues are not correctly stated, (2) the evidence in reference to the injury sustained by the insured and its effect is minimized, (3) the Missouri law is misinterpreted or ignored, and (4) an undue emphasis is placed on the fact that during the period under inquiry the insured was able successfully to direct his farm operations. This being a minority opinion I shall direct attention to these matters briefly without undertaking to demonstrate them at length.

1. *The Issues.*—To sustain the burden of proving that the insured was not totally and presumably permanently disabled within the meaning of the policies during the period in issue, the plaintiff introduced in evidence the policies and a transcript of the testimony taken in the trial in Daviess County and which was before the Kansas City Court of Appeals and considered by that court in the opinion in 232 Mo.App. 1048, 114 S.W.2d 167.

The policies provide that the company agrees to pay monthly benefits and to waive premiums "upon receipt of due proof that the insured is totally and presumably permanently disabled before age sixty, as defined *. * *.*" The definition recites: "Disability shall be considered total whenever the insured is so disabled by bodily injury or disease that he is wholly prevented from performing any work, from following any occupation, or from engaging in any business for remuneration or profit."

In his applications for the policies the insured stated that he was a farmer, that he owned and operated a grain and stock farm, and that he had had no previous occupation.

In its petition for a declaratory judgment the plaintiff, appellant, alleged that "the defendant has been engaged in a recognized work, business and occupation for profit and from which he obtains a livelihood."

Upon the trial the evidence offered by appellant all related to the operation of the grain and stock farm which the insured was operating at the time the policies were issued. In objection to a question counsel for appellant said "the exact duties are stated in the application for insurance and no other duties are covered by the issues in this case."

The appellant offered no evidence to prove, and made no claim, that the insured could perform any work, follow any occupation or engage in any business for profit other than in the operation of the farm which he was operating when the policies were issued.

The majority opinion erroneously states that "The *appellee* contends that the construction [of the policies] should go further and the phrases interpreted as limited to the business or occupation in which insured was engaged when the insurance policies were issued." The opinion then clouds the issues by holding that the burden is on the appellant but in effect dealing with the problem as if the burden were on appellee. It works out that the majority avoids the application of the Missouri law by an attempt to distinguish between the policies in suit and "occupational insurance" policies. Such a distinction is not warranted. The appellant having the burden of proof tried this case on the theory that the insured is engaged in the "occupation" and business of operating a grain and stock farm.

2. *The Injury and Its Effects.*—The appellee was injured June 29, 1931. The bones in his ankle were broken. The main bone in his leg was broken about four inches above the ankle. The ankle became ankylosed. Infection developed resulting in calcification and the destruction of the ankle joint. The muscles of the lower leg are attached to the bone and do not function. The injured foot and ankle are larger than normal and are painful. There is permanent infection. The blood does not circulate properly in the foot and it is cold.

After the injury insured was in the hospital two months. He was then in bed at home for three months; then in a wheel chair for a month; then on two crutches for a month; then on one crutch and a cane for a month; and since that time he can get about with one cane. He can walk from one to two blocks in a day, but when he does so, his ankle swells and he can not sleep at night for the pain. He can drive his automobile, but it has the same effect as walking. He can not walk on rough or uneven ground. This condition is permanent, and he can do no physical labor.

3. *The Missouri Law.*—The latest pronouncement of the Supreme Court of Missouri in a case of this character is found in Heald v. Aetna Life Ins. Co., 340 Mo. 1143, 104 S.W.2d 379, 382. The policy there considered provided for total disability benefits if the injury "wholly and continuously disable the insured from date of accident and prevent him from performing any and every duty pertaining to his occupation." With reference to the rule of construction the court said: " * * * that where the language of an insurance policy is plain and unequivocal there is no room for construction and the words employed must be given their usual and natural meaning. State ex rel. Commonwealth Casualty Co. v. Cox, 322 Mo. 38, 14 S.W.(2d) 600, loc. cit. 602, 603. Such is the rule, but to that rule there is an equally well settled exception, viz.: If the language is ambiguous, i. e., open to different interpretations, its meaning is to be determined by judicial construction, and in insurance contracts the construction most favorable to the insured must be adopted. State ex rel. Security Ins. Co. v. Allen et al., 305 Mo. 607, loc. cit. 614, 267 S.W. 379, 381. The rule prevailing in this state and in most other jurisdictions is to the effect that a provision such as the one before us, with respect of the phrase 'any and every duty,' would render the contract utterly useless to an assured and would be nothing short, practically speaking, of collecting a premium without rendering a consideration in so far as the total disability clause is concerned (James v. United States Casualty Co., 113 Mo.App. [622] loc. cit. 629 [88 S.W. 125]); so said provision in this policy must be construed so as to make the provision effective. The rule prevailing in most jurisdictions is that the 'total disability contemplated by an accident policy, or the disability clause of a life policy does not mean, as its literal interpretation would require, a state of absolute helplessness; rather, that *the disability contemplated means inability to do all the substantial and material acts necessary to the prosecution of the insured's,* or, in many instances, any, *business or occupation,* in a customary and usual manner.' Headnotes

to Annotations in 98 A.L.R. 789. The leading cases cited therein from this state are James v. United States Casualty Co., 113 Mo.App. 622, 88 S.W. 125, 127; Foglesong v. Modern Brotherhood of America, 121 Mo.App. 548, 97 S.W. 240; Bellows v. Travelers' Ins. Co. (Mo.Sup.) 203 S.W. 978." (Italics supplied).

The Bellows case, supra, was decided by the Supreme Court of Missouri in 1918. The court therein approved and followed the rule in the James case, 1905, supra, that total disability, as used in an insurance policy, does not mean "that the assured was rendered absolutely and literally unable to perform any part of his occupation, but that he was disabled from performing substantially the occupation stated in the policy." [203 S.W. 983.]

The Foglesong case referred to in the opinion in the Heald case, supra, was decided by the Kansas City Court of Appeals in 1906. The contract in that case provided for the payment of disability benefits upon proof "of the permanent and total disability of the said member (plaintiff), which renders him unable to carry on or conduct any vocation or calling." The insured was a farmer. His right leg was afflicted with a permanent disease which at first confined him to his bed for three months. There was some improvement so that he could walk on crutches and after a while with the aid of a cane. "It was shown that he directed the work to be done on his farm, and that he performed some labor himself". He drove the wagon in hauling corn and coal, and he directed his sons in carrying on the business of the farm. The court said: "The language of the policy, 'perma-nent and total disability of said member, which renders him unable to carry on or conduct any vocation or calling,' the vocation of the insured not being designated, should be construed as meaning, if anything, the vocation or calling in which he might be following at the time he became disabled." (citing authorities) The court then approved the rule of the James case, supra, that permanent and total disability means to be "disabled from performing *substantially* the occupation stated in the policy."

Having been approved by the Supreme Court in the Bellows case, the James and Foglesong cases, supra, have long been accepted by the Supreme and Appellate Courts of Missouri as correctly stating and applying Missouri law and as authorities governing the interpretation of all substantially similar forms of disability provisions.[1]

The evidence introduced by appellant showed that the "substantial and material acts necessary to the prosecution" of carrying on the occupation and business of operating the insured's 305-acre farm consisted of two parts, one of which was largely physical and the other mental. They were (a) handling horses and livestock, plowing, listing, cultivating corn, sowing, reaping, harvesting crops, walking and husking corn, scooping corn and grain, pitching hay, physical work of all kinds; and (b) directing and supervising hired men, deciding when to plant and harvest, buying and selling livestock and grain. Before the injury the insured was able to do and did all of these duties. Since the injury he has been and always will be unable to do any of the

[1] Burns v. Ætna Life Ins. Co., Mo. App., 123 S.W.2d 185; Stoner v. New York Life Ins. Co., 232 Mo.App. 1048, 114 S.W.2d 167; Smith v. Metropolitan Life Insurance Co., Mo.App., 108 S.W. 2d 995; Pogue v. Metropolitan Life Ins. Co., Mo.App., 107 S.W.2d 144; Barton v. Metropolitan Life Insurance Co., Mo. App., 103 S.W.2d 889; Corcoran v. Metropolitan Life Ins. Co., Mo.App., 93 S.W.2d 1027; Stoner v. New York Life Ins. Co., Mo.App., 90 S.W.2d 784; Heald v. Ætna Life Ins. Co., Mo.App., 90 S. W.2d 797, affirmed in 340 Mo. 1143, 104 S.W.2d 379; Farmer v. Metropolitan Life Ins. Co., 230 Mo.App. 80, 85 S.W. 2d 235; Young v. Metropolitan Life Ins. Co., 229 Mo.App. 823, 84 S.W.2d 1065; Moss v. Metropolitan Life Ins. Co., 230 Mo.App. 70, 84 S.W.2d 395, re-viewed on certiorari in State ex rel. Metropolitan Life Ins. Co. v. Hostetter, 338 Mo. 589, 92 S.W.2d 112; Buis v. Prudential Ins. Co. of America, 229 Mo. App. 190, 77 S.W.2d 127; Kane v. Metropolitan Life Ins. Co., 228 Mo.App. 649, 73 S.W.2d 826, reviewed on certiorari in State ex rel. Metropolitan Life Ins. Co. v. Allen, 337 Mo. 525, 85 S.W.2d 469; Rickey v. New York Life Ins. Co., 229 Mo.App. 1226, 71 S.W.2d 88; Hurt v. Equitable Life Assur. Soc., Mo.App., 53 S.W.2d 1101; Katz v. Union Central Life Ins. Co., 226 Mo.App. 618, 44 S.W. 2d 250; Frost v. Central Business Men's Ass'n, Mo.App., 246 S.W. 628; Ramsey v. General Accident, Fire & Life Ins. Co., 160 Mo.App. 236, 142 S.W. 763; Albert v. Metropolitan Life Ins. Co., Mo.App., 95 S.W.2d 343.

physical acts necessary to farming. He can now and ever since the injury occurred has been able to direct the farming operations, but he can not supervise the work. He buys livestock through a broker, but he can not go to the stock yards and inspect ·the stock and never can do so.

In the Heald case the court pointed out that the business or occupation of the insured cannot be considered as a "double occupation * * * composed of the separate functions." The business or occupation must be considered as "a unit, involving interrelated duties, to be normally carried on by the performance of all the substantial duties involved in it."

On both appeals in the suits on these policies the Kansas City Court of Appeals considered the testimony and reviewed the decisions of the Supreme and Appellate courts of Missouri and held that the question of total and presumably permanent disability was a jury question. In a similar case arising in Kentucky where the law is the same as in Missouri and in which the language of the policy in suit was equivalent to that in these policies and the testimony in reference to the injury very much the same, the Circuit Court of Appeals of the Sixth Circuit held that the question of total disability was for the jury, Equitable Life Assur. Soc. of the United States v. Bomar, 6 Cir., 106 F.2d 640, 643, and that the evidence was sufficient to sustain a verdict against the insurance company.

In the present case Judge Otis of the district court, without reference to the decisions of the Missouri courts, found that the plaintiff did not sustain the burden of proof which it assumed and that Stoner was totally and permanently disabled during the period in issue within the meaning of the policies. I do not think his finding upon this record can be held under the Missouri law to be "clearly erroneous". Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C. A. following section· 723c.

4. *The Conclusion.*—The majority conclude that because the insured is a healthy man except for the injury to his limb, is able to walk short distances, can drive his car for some distance without undue pain and is able to direct successfully the operations of his farm, the result must necessarily follow that a finding that he is "totally disabled" within the meaning of the policies can not be sustained. They arrive at this conclusion by emphasizing these facts in contravention to the rule that the

evidence should be viewed in the light most favorable to the insured on this appeal and by entirely divorcing from consideration that part of the insured's occupation requiring physical labor. This in my opinion is a substitution of the views of a federal court for the law of Missouri.

Stoner, even if completely paralyzed but still able to be driven about in an ambulance, might well continue to operate his farm as successfully as he now does; and the argument might still be advanced that he was not "wholly prevented from * * * engaging in any business for remuneration or profit." It is to avoid the harshness of a literal application of the terms of policies of this kind that has led the courts of Missouri and those of other jurisdictions to hold that disability is total when the insured is unable to perform all the substantial and material acts of his business or occupation in a customary and usual manner. To this rule the further qualification is added that the insured's business must not be viewed as a double occupation made up of separate functions but must be considered as a unit involving interrelated duties.

The majority refuse to apply these principles to the facts in the instant case. I am of the opinion that under the law of Missouri the evidence amply sustains the finding of the district court.

The judgment appealed from should be affirmed.

VAN VALKENBURGH, Circuit Judge (concurring).

I concur heartily in Judge DEWEY'S opinion and feel that the conclusion he has reached requires no additional support. However, I cannot agree with Judge THOMAS' view of the Missouri law as declared by the highest court of that state. As stated by Judge Dewey, "there is nothing to indicate that the Supreme Court of Missouri has or would adopt such a construction which is contrary to the weight of authority". Of course this contract is governed by Missouri law, and this court must apply the state law as declared by the highest state court.

It must follow now, as before the decision in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A. L.R. 1487, that, absent state statute, federal courts are constrained to follow the construction placed upon the law by state courts only when such construction is clearly established. I do not by this mean to im-

ply that the Supreme Court of Missouri would construe this permanent disability clause of the insurance contract as claimed by appellee. I do not think it could or would do so. It is sufficient for the purposes of this case that it never has done so.

It is charged that the majority opinion does not correctly state the issue. On the contrary, the broad issue is clearly apparent. It is whether the highest court in this state will continue to adhere to its consistently declared rule of decision that, in insurance contracts, as in all contracts, plain and unambiguous language must be given its plain meaning; or whether the "perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists" shall be authorized and approved. Wendorff v. Missouri State Life Insurance Co., 318 Mo. 363, 1 S.W.2d 99. This insurance contract states with exceptional clearness what the appellant company undertook to do. With explicit pains it confined its liability to cases where by the injury the insured is not only prevented from performing any work, but also "from following any occupation or from engaging in any business for remuneration or profit". The obvious purpose was thus to limit the scope of its responsibility. The majority opinion does not erroneously "attempt to distinguish between the policies in suit and occupational insurance policies". The distinction stands out clearly on the face of these policies. The purpose of the insurer to make that distinction is evident. It would be difficult to frame language more descriptive of that purpose. The majority opinion seeks only to give effect to the contract made.

In his application for this insurance coverage, when requested to state his exact duties in full, he replied, "owns and operates grain and stock farm". It is true that "the appellant having the burden of proof tried this case on the theory that the insured is engaged in the "occupation and business of operating a grain and stock farm"; and so he is. There is no trouble about the burden of proof. If the evidence, by whomsoever produced, discloses the true situation, judgment should go accordingly. Complainant introduced evidence that established beyond dispute, and was undisputed, that appellee was, during the period in question, following an occupation and engaged in a business for remuneration and profit; therefore, within the terms of the disability clause. He was conducting these operations substantially as he did before he was injured, with less physical participation on his part, and with less men employed, and, as he expresses it, with more modern machinery. He does all the substantial and material acts essential on his part to the operations in which he is engaged. There are, of course, humane modifications of any too strict construction of total disability provisions. Judge Woodrough, sitting in District Court, announced the following rule, which received the full approval of this court, United States v. Rice, 8 Cir., 72 F.2d 676, loc. cit. 677, 678: "By a 'total disability' is meant not necessarily that the man is flat on his back or bedridden, unable to move at all, but it means that assuming a good faith continuous and continued endeavor and effort on his part his disability is such as to render it impossible for him to carry on continuously a substantially gainful occupation. By 'substantially gainful occupation' is meant an occupation that produces and gains a man a fair and decent living having regard to his station, and by 'continuously carry on' is not meant necessarily that he should work every day, so many hours per day, but that he should be able to carry on assuming, as I say, a fairly good faith effort, but not assuming any such strain and endeavor as would jeopardize his health or his life, but he should carry on with reasonable and fair regularity, having in mind the way in which occupations are carried on under our system in this country".

Under this rule, and under any construction announced by the Supreme Court of Missouri, appellee is now following an occupation and is engaged in a business for remuneration and profit within the terms of the total disability clause. If the conditions were such that appellee could not carry on a substantially gainful occupation because of his injury the situation might be as appellee contends, but that is not the case here. As said by this court in United States v. Harth, 8 Cir., 61 F.2d 541, 546:

"It is to be presumed that any appreciable degree of disability is attended by discomfort, pain, or, at least, by inconvenience and handicap in the discharge of the normal activities of life. If such conditions are to be deemed sufficient to warrant recovery under the terms of a war risk policy, then the precision with which the degree of disability, necessary for such recovery, has been defined was wholly unnecessary. * * *

"We cannot approve recovery upon a contract of insurance, the express and cru-

cial terms of which have obviously not been met".

Appellee has so far recovered from his injury that he is carrying on his operations, with some inconvenience of course, but substantially as he did before his injury. According to appellee's theory, such a recovery would be impossible if any appreciable effects of that injury remained, thereby disregarding the distinction between temporary and partial disability and permanent and total disability. Appellant, with commendable indulgence, continued disability payments, perhaps beyond the necessary period, until appellee's condition became manifest and certain. There is a measure of irony in the fact that this conduct is adverted to as a concession favorable to appellee's recovery in this case. Appellant, in contesting further disability payments, acted within its contract rights. Of a similar situation this court said in United States Fidelity & Guaranty Co. v. McCarthy, 8 Cir., 33 F.2d 7, 13, 70 A.L.R. 1447: "A person may be disabled to-day, and in a year from now, without any change in the physical condition, not be disabled. A one-handed man may not be able to perform surgery to-day, and in a year from to-day may have overcome to some extent his disability and be able to perform some part of the substantial duties of a surgeon. If appellee's hand remains in the same condition for the years to come, it might be that he could do some surgical work, and it might be he could not. That is a question of fact to be determined for the period for which he seeks to recover indemnity. That his hand remains in the same condition is not conclusive that his disability also continues". New York Life Insurance Co. v. Stoner, 8 Cir., 92 F.2d 845, 848.

In order to prevent undue length to his opinion Judge Dewey has not quoted largely from the testimony. The record, however, lends overwhelming support to his conclusion—in fact there is, in our judgment, no room for disagreement as to its weight. The trial judge in his opinion, as quoted in the majority opinion, of this court, has supplied for us a convincing personal view of the physical condition of the insured. It being the judgment of the majority that the evidence in favor of appellant leaves no disputed question for the trier of the facts, Rule 52 of the Rules of Civil Procedure is without application. Nor was it necessary for appellant to prove by the greater weight of the testimony that the insured can follow any or all of those occupations by which men may earn livelihoods. It is enough that he can and does follow one such occupation for remuneration and profit.

It is with much regret that I feel constrained to disagree with one of my associates in the premises, but the matter is of such importance not only to the soundness of insurance contracts, but to the integrity of contract construction generally, that I have felt impelled to add my express concurrence in Judge Dewey's excellent opinion, and disposition of the cause.