## MERCANTILE–COMMERCE BANK & TRUST CO. et al. v. EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES.

### No. 699.

District Court, E. D. Missouri, E. D.

Dec. 31, 1942.

Cobbs, Logan, Roos & Armstrong, of St. Louis, Mo., for plaintiff.

Rassieur & Rassieur, of St. Louis, Mo., for defendant.

COLLET, District Judge.

This action is to recover disability benefits and for the return of premiums paid on an insurance policy. The amount involved is $29,203.50, exclusive of interest. Plaintiffs are residents of Missouri. Defendant is a New York corporation.

In November, 1921, two life insurance policies, one for $15,000, the other for $10,000, were issued by defendant to Clarence R. Comfort of St. Louis, Missouri. Both policies are Missouri contracts. Each contained the following provisions: "If the insured becomes wholly and permanently disabled before age 60, the Society will waive subsequent premiums and pay to the insured a disability annuity of One Hundred Fifty Dollars a month", (and One Hundred Dollars a month in the other policy.)

"(I) Disability Benefits before age 60 shall be effective upon receipt of due proof, before default in the payment of premium, that the Insured became totally and permanently disabled by bodily injury or disease after this policy became effective and before its anniversary upon which the Insured's age at the nearest birthday is 60 years, in which event the Society will grant the following benefits:

"(a) Waive Payment of All Premiums payable upon this policy falling due after the receipt of such proof and during the continuance of such total and permanent Disability; and

"(b) Pay to the Insured a Monthly Disability-Annuity as stated above; the first payment to be payable upon receipt of due proof of such Disability and subsequent payments monthly thereafter during the continuance of such total and permanent Disability.

"(Note: Any Premiums so waived and any Disability-Annuity so paid shall not be deducted from any amount payable in any settlement of this policy.)

"Disability shall be deemed to be Total when it is of such an extent that the Insured is prevented thereby from engaging in any occupation or performing any work for compensation of financial value, and such Total Disability shall be presumed to be Permanent when it is present and has existed continuously for not less than three months; and, further, the entire and irrecoverable loss of sight of both eyes, or the severance of both hands at or above the wrists, or of both feet at or above the ankles, or of one entire hand and one entire foot, will of themselves be considered as Total and Permanent Disability within the meaning of this provision.

\* \* \* \* \*

"(III) Recovery from Disability.

"The Society shall have the right at any time or times during the first two years after receipt of such proof of disability, but thereafter not more frequently than once a year, to require proof of the continuance of such total disability. If the insured shall fail to furnish satisfactory proof thereof, or if it appears at any time that the Insured has become able to engage in any occupation or perform any work for compensation of financial value, no further premiums will be waived and no further Disability-Annuity payments will be made hereunder on account of such disability."

The annual premiums were "written up" because of a chronic heart ailment with which the insured had been afflicted for several years and which is referred to as a "heart block". On May 29th, 1930, the insured had a severe attack of this ailment, the technical term for which need not be used, and the premiums having been paid on the policies, claim for disability was thereafter made and allowed on November 3, 1930. The claim as allowed included monthly payments of $250, commencing August 29, 1930, and the waiver of annual premiums beginning November 3, 1930. During the period from May 29th, 1930, until February 12, 1932, the insured was constantly away from his business totally disabled. At the time the policies were issued he was for all practical purposes the owner of the Comfort Printing and Stationery Company and the Comfort Speciality Company, corporations which he had organized and of which he was President. He had started and built up both businesses. Prior to his illness in 1930, a large part of his activity had been in personally soliciting sales. In that work he had led a very active life. During his illness he continued to receive from both corporations his monthly salary which was based to a large extent upon net earnings. Both businesses appear to have been successful and profitable.

On March 15, 1932, the insured wrote defendant a letter of which the following is material:

"I wish to advise you that I am back at my desk for short periods each day. I hope to regain my strength sufficiently to be able to continue at work and unless you hear from me to the contrary before the end of the month, you need not send the checks on the above claims."

No further disability payments were made after March, 1932, and the payment of annual premiums was resumed November 3, 1932.

The record depicts another of the frequent cases where an active businessman returns to his work against the advice of his physician and at the risk of bringing about his death or hastening it.

But when the insured returned to his business his conduct was completely different. His office was moved from a place easily accessible to visitors and employees to a location where seclusion would result. Strict orders were given employees that he was not to be unnecessarily disturbed. He occupied a short period of time each day in going through more important mail, examining trade journals and advising with his son and one or two of the older executives concerning the operation of the business. His son drove him home at noon each day. After a time this inconvenience to his son was remedied by the installation in the insured's office of a bed or couch where he could lie down. He was instructed to and did rest in that manner for two or two-and-a-half hours immediately after lunch each day, during which time no one disturbed him. When his son was through for the day he drove them home. Contacts with business acquaintances and customers were maintained as best they could be at luncheon and occasional visits but the active life of a salesman was never resumed. Before his illness he had been accustomed to taking his family to Michigan for vacations. These trips were resumed and he drove the automobile for short periods of time but never alone. Once on such a vacation he engaged in a game of badminton and had a reasonably severe heart attack as a result, which confined him to his bed.

The disease from which he was suffering was incurable and progressive. It had progressed to such an extent in May, 1939, that he was again hospitalized and after careful examination any further connection with his business was forbidden. He died July 26, 1940.

In 1937, the insured brought suit against the Travelers' Insurance Company on another policy similar to those now involved in which he asserted his total and permanent disability from May 30, 1930. At the trial of that case the jury was instructed in substance that if the insured returned to his business and had been performing a substantial portion of the duties of President and receiving the salary therefor, he was not totally disabled. The verdict was for the defendant, the trial court granted a new trial on account of the error of the instruction noted, and the St. Louis Court of Appeals affirmed. Comfort v. Travelers' Insurance Co., 131 S.W.2d 734. That opinion was filed September 12, 1939, and a rehearing was denied on October 10, 1939.

On June 22, 1939, the insured wrote defendant asking that the disability benefits be resumed and further premiums waived. In that letter he stated that by exercising care he had been able "to attend to (his) work at the office", but that his heart muscles had deteriorated to such an extent that his physician advised him to discontinue work. He requested that the payment of the disability benefits be resumed as of May 18, 1939. Defendant declined to consider the commencement of the payments as of May 18th, on the ground that the benefits did not begin until the expiration of a three months' waiting period. Whereupon an argument ensued which was settled September 9, 1939, by the defendant approving the claim as of May 18th and waiving subsequent premiums. Nothing was said by either party in that discussion about any claim for disability during the interim between February, 1932, and May, 1939.

October 24, 1939, the insured wrote the defendant as follows:

"It is my present intention to file a claim for disability benefits under the above two policies and the Group Certificate for disability benefits for the period from February 12, 1932, to May 17, 1939.

"You will recognize this period as being that time running between the closing of my 1930 claim and the opening of my 1939 claim.

"I am prepared to submit medical evidence that I was totally and permanently disabled during that period of time, and that the disability under which I am now resting is the same disability from which I suffered in 1930 and it has been continuous all the way through."

To which defendant replied on November 29: "As to your request for benefits over the period you were working from March 15, 1932 up to May 18, 1939, we are very sorry to say that we shall be unable to comply with your request as your contract makes no provision for benefits for partial disability or for disability that merely prevents you from engaging in your own particular line of work."

On October 24th, insured complained to defendant that the disability payment checks carried a stamped endorsement on the reverse side: "In full settlement of any and all disability claims to the date of this check", and asked that it be removed or that defendant agree that such endorsements should not prejudice any other claims under the policies. Defendant declined to remove the endorsements because such endorsements were the universal practice but agreed that the endorsement should not affect other claims, stating:

"However, we are willing to concede that your acceptance of such endorsement does not constitute a waiver of any right you may think you have and, of course, the Society reserves all its rights under the policies."

The policies were made payable to the insured's executors, administrators or assigns. Plaintiffs are the executors of the insured's estate by testamentary appointment. The recovery sought, for both monthly disability payments and for the return of premiums paid during the period from February, · 1932, to May, 1939, totals $29,203.50, exclusive of interest.

■ The primary question is whether the insured was totally and permanently disabled within the meaning of this policy. Plaintiffs contend that the question has been determined by the decision of the St. Louis Court of Appeals in Comfort v. Travelers Ins. Co., supra. It was not. That Court merely held that it did not necessarily follow from the evidence in that case as a matter of law that the insured was *not* totally and permanently disabled, and reiterated the definition of total and permanent disability theretofore announced in other cases and which has been restated in Stoner v. New York Life Ins. Co., Mo. App., 90 S.W.2d 784. See, also, New York Life Ins. Co. v. Stoner, 8 Cir., 109 F.2d 874 and Stoner v. New York Life Ins. Co., 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284. The opinion in Comfort v. Travelers Ins. Co., contains a very complete statement of the facts concerning the insured's disability. From that statement it appears that a very large part of the evidence offered in this case was also submitted in the Travelers case. Some additional evidence was offered here which need not be stated in detail. The evidence in this case prompts the finding of fact that the insured was in such physical condition during the period in question that he was unable to perform any of the material and substantial duties of his own or any business for which he was suited, in a substantial or customary and usual manner and hence was, under the rule so recently announced by the Missouri Courts, totally and permanently disabled within the meaning of the policies. As stated in Comfort v. Travelers Ins. Co. the payment of his salary was more in the nature of a distribution of earnings from the corporation than compensation for services.

■ Defendant contends that Heald v. Aetna Life Ins. Co., 340 Mo. 1143, 104 S.W.2d 379, announces a doctrine contrary to Comfort v. Travelers Ins. Co., supra, and Stoner v. New York Life Ins. Co., supra. Both the Supreme Court and the Kansas City Court of Appeals and the St. Louis Court of Appeals have considered Heald v. Aetna, supra, and have concluded that it is in accord with both the Comfort and Stoner cases. See Stoner v. New York Life Ins. Co., 311 U.S. loc. cit. 469, 61 S.Ct. 336, 85 L.Ed. 284. But in view of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the controlling effect of the interpretation of the Heald opinion by the Supreme Court is considerably minimized to say the least by the fact that the Kansas City Court of Appeals and the St. Louis Court of Appeals have considered Heald v. Aetna Life Ins. Co. and concluded that it is in accord with both the Comfort and Stoner cases.

■ Defendant contends that the furnishing of proof of disability by the insured was a condition precedent to liability and since none was submitted there may be no recovery. The insured during his lifetime offered to submit such proof but the defendant denied liability on the ground he was not totally disabled, without such proof. It requires no citation of authority to demonstrate that defendant waived this requirement.

It is argued that the insured waived any claim he may have had to disability benefits and the waiver of premiums between March, 1932, and May, 1939, by notifying the defendant on March 15, 1932, that it need not continue the disability benefits since he "was back at his desk for short periods each day", and thereafter paid the annual premiums until November 1939.

■ The requirements of an effective waiver are stated in Williams v. Chicago, Santa Fe & California Railway Company,

153 Mo. 487, 54 S.W. 689, 699, cited by defendant, as follows: "The doctrine of waiver is one of the most familiar in the law. Bishop defines it in this way: 'Waiver is where one in possession of any right, whether conferred by law or by contract, and of full knowledge of the material facts, does or forbears the doing of something inconsistent with the existence of the right or of his intention to rely upon it. Thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterwards.' Bish.Cont. (1887), § 792."

It is to be noted that one of the requirements is that the party charged with the waiver have full knowledge of the material facts. It is suggested that no one was better acquainted with the facts than the insured. But it is very clear that he was not cognizant of the applicable definition of total disability. Certainly it could not be gleaned from the contracts. Without accurate knowledge of what total disability was it was impossible for him to accurately determine the ultimate fact i. e. whether he was within the legal meaning of the policies totally disabled. If it be argued that the ultimate question of total or partial disability was a question of law which he, unlike the Court and counsel, was conclusively presumed to know the answer to, the answer is that the Court in Comfort v. Travelers Ins. Co. has authoritatively and correctly held that "whether or not the plaintiff [insured] was totally disabled within the meaning of the policy provision is a mixed question of law and fact." [131 S.W.2d 741.] In instances of this nature the mixture is so complete and both the facts and the law in combination are so necessary to the determination of the ultimate fact that they cannot be segregated. The result is that the insured must be held to have been ignorant of both the law and the ultimate fact. Under those circumstances there can be no waiver. Penn. Mutual Life Ins. Co. v. Forcier, 8 Cir., 103 F.2d 166.

■ There is criticism that the insured was guilty of laches in asserting that he was totally disabled. The criticism is unwarranted, if not uncharitable, in view of the fact that as between the insured and defendant, he seems to have been the first to discover that fact. It appears likely that the opinion in the Travelers case was a potent factor in bringing to the insured the definite realization that the facts in his possession led to the conclusion that he was totally disabled within the meaning of these policies. There was no unreasonable delay amounting to laches.

■ Defendant urges the doctrine of equitable estoppel. Only one element of that doctrine need be referred to. It is that there must have been a false representation or a concealment of material facts. Coen v. American Surety Co., 8 Cir., 120 F.2d 393, loc. cit. 398. There was neither a false representation or a concealment of a material fact. Other elements of that defense are lacking. They need not be discussed.

The next contention is that there was an "accord and satisfaction" by the acceptance in September and October, 1939, of the disability benefit checks with the endorsement stamped thereon: "In full settlement of any and all disability claims to the date of this check."

■ One of the essential elements of an accord and satisfaction is that there be a bona fide dispute concerning the subject of the accord claimed. The subject matter of the present controversy was in no manner involved in the settlement which is the basis of the present defense of accord and satisfaction. The dispute which was settled was whether payments should be made on the second disability claim from May 18, 1939, or whether those benefits should not begin until after the expiration of a three months' waiting period. As heretofore stated, there was then no mention whatever of any claim for disability for the period now involved. The very fact that there was no mention of the present claim at that time is one basis upon which defendant is now making the defense of laches and estoppel. In addition, the record clearly shows that the only reason the endorsement was placed on the checks was because it was the universal rule to do so in all cases. For that reason no one could discontinue placing it on these checks even after it was conceded that in this instance it did not mean anything. The very existence of the endorsement on these checks was therefore not because of any factual justification but in spite of the actual fact that it did not apply.

■ The contention that the payments of premiums were voluntary and for that reason may not be recovered, merits scant notice. Payments are not considered voluntary when made under a mis-

 

apprehension of the true facts and requirements. The insured evidently thought it was necessary for him to pay the premiums to keep the insurance in force. They were either accepted by defendant under the same misapprehension or when defendant knew it had no right to require them. The payments of the premiums were not voluntary in the sense that they were made with full knowledge of the facts.

■ Defendant insists that since it paid to the insured in dividends during the period in question $346.75 more than he would have been entitled to receive had the premiums been waived during that period, plaintiffs are now estopped from asserting that he was disabled. The explanation of this alleged overpayment is that all life policies upon which premiums are being paid are arbitrarily placed in one classification by defendant and all policies upon which premiums are not being paid because of disability waiver are placed in another classification. In order to prevent the diminution of the dividends to which the paying policyholders would be entitled by paying out of earnings from premiums paid by them, the same dividends to non-paying policyholders who had contributed less to the fund which earned the dividends, defendant fixed a different and lower rate of dividend for the non-premium-paying policyholder. If the extra premium paid to secure the benefit of the disability and waiver of premiums features of the policy was not adequate to put the policyholder who became disabled on a parity with the other policyholders, some such expedient as the one adopted would be necessary in fairness to all policyholders, assuming, of course, that the practice did not simply result in a profit to defendant. Plaintiffs insist that it must be assumed that the extra premiums were adequate for the purpose of carrying the non-paying policyholder on a parity with the others who are paying premiums. But there is nothing in this record from which the propriety of the amount charged for the disability benefit and waiver of premium privileges could be determined and the desirability of making such a finding in a cause of this nature would be highly questionable if the factual basis therefor existed. Matters relating to rate-making on policies of insurance companies are questions more properly for regulatory bodies than the Courts. Since defendant does not request the return of the alleged overpay-

ment the right of the insured to the whole amount paid need not be determined. The question presented on the record is one of estoppel. The payment of the dividends by defendant and the acceptance of the whole amount thereof by the insured should not under all of the circumstances operate as an estoppel. If and when defendant requests the return of a portion of these dividends, it will then be soon enough to determine that question.

Judgment will be entered for plaintiffs.